**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 21-cv-02236-NYW

BRIAN WILLIAMS,

      Plaintiff,

v.

CITY OF ARVADA, and
DAN PUMPHREY,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment") filed by Defendants City of Arvada ("the City" or "Arvada") and Dan Pumphrey's ("Defendant Pumphrey" or "Mr. Pumphrey") (collectively, "Defendants"). [Doc. 23, filed May 13, 2022]. Plaintiff Brian Williams ("Plaintiff" or "Mr. Williams") filed a Response (the "Response"), [Doc. 28, filed June 8, 2022], and Defendants filed their Reply (the "Reply"), [Doc. 29, filed June 22, 2022]. The Court finds that oral argument would not materially assist in the resolution of the issues in the Motion. For the reasons set forth below, the Court respectfully **GRANTS** the Motion.

## BACKGROUND

### I.  Factual Background

The following facts are drawn from the record in this case and are undisputed for the purposes of summary judgment, unless otherwise noted.

This action stems from the termination of Plaintiff Brian Williams's employment from Arvada. Plaintiff was hired in 1988 as an employee in the City's Streets Division. [Doc. 23 at ¶

1 (citing Doc. 23-1 at 11:12, 13:13-15); Doc. 28 at 2]. He was employed as a maintenance worker, and was eventually promoted to Streets Foreman in 2006. [Doc. 23 at ¶ 2 (citing Doc. 23-2 at 13:10–12); Doc. 28 at 2]. Plaintiff's employment was terminated in September 2020.[1] [Doc. 23 at ¶ 3; Doc. 28 at 2; Doc. 23-2 at 172:22–24]. At the time, Don Wick ("Director Wick") was the Director of Public Works; Dan Pumphrey ("Defendant Pumphrey" or "Mr. Pumphrey") was the Superintendent of the Streets Division; Craig Koehler was the Concrete Crew Supervisor ("Mr. Koehler"); Cody Henry ("Mr. Henry") was the Asphalt Crew Supervisor, and Craig Smith ("Mr. Smith") was the Sweeping and Mowing Crew Supervisor. [Doc. 23 at ¶ 3; Doc. 28 at 2; Doc. 23-2 at 14:19–25; 15:1–4].

Over the course of his employment with the City, Plaintiff filed eighteen workers' compensation claims. [Doc. 23 at ¶ 4 (citing Doc. 23-2 at 33:15–17); Doc. 28 at 2]. The City never terminated, disciplined, demoted, or reduced Plaintiff's salary as a result of any of his claims. [Doc. 23 at ¶ 4 (citing Doc. 23-2 at 33:18–34:13); Doc. 28 at 2]. Plaintiff is not disabled, and is unsure what the City believed his disability to be. [Doc. 23 at ¶ 5 (citing Doc. 23-2 at 16:15–17, 23:21–24:16); Doc. 28 at 2]. Plaintiff sustained a shoulder injury in 2019, at which time the City respected his work restrictions and put him on light duty. [Doc. 23 at ¶ 6 (citing Doc. 23-2 at 101:20–102:8; 105:13–106:18; 226:16–23); Doc. 28 at 2].

For a portion of 2020, Plaintiff was on the sweeping and mowing crew with no adverse impact. [Doc. 23 at ¶ 7 (citing Doc. 23-2 at 96:2–97:7, 109:16–112:8; Doc. 23-7 at 55:16–

---

[1] In his Complaint, Plaintiff alleged that, on September 9, 2020, he was scheduled for a meeting and that prior to that meeting, Jeff Mozingo ("Mr. Mozingo") told him that Director Wick he "had no choice but to retire." [Doc. 1 at ¶ 43]. Plaintiff further averred that he was constructively discharged. [*Id.*]. However, in this instant Motion, Defendants proffered evidence that Director Wick terminated Plaintiff, citing correspondence dated September 9, 2020. [Doc. 23 at ¶ 30 (citing Doc. 23-3 at 10)]. In Response to the Motion for Summary Judgment, Plaintiff admitted the facts as alleged by Defendants in Paragraph 30—i.e., that Mr. Williams was terminated, and not constructively discharged. [Doc. 28 at 2, ¶ 61].

56:20); Doc. 28 at 2].  Plaintiff hoped to be transferred to a concrete crew; that purely lateral transfer was made possible when an employee on the concrete crew needed to cross-train on sweeping and mowing.  [Doc. 23 at ¶¶ 8, 9 (citing Doc. 23-2 at 108:20–109:15, 117:6–119:4, 109:21–111:8, 285:11–14); Doc. 28 at 2].  Plaintiff was returned to the sweeping and mowing team when his fellow employee's cross-training had finished.  [Doc. 23 at ¶ 9 (citing Doc. 23-2 at 117:6–119:4; Doc. 28 at 2].

Plaintiff had a history of at least four insubordinate and angry outbursts in his time with the City, though he only received a "writeup" for one such event.  [Doc. 28 at ¶ 10 (citing Doc. 23-3; Doc. 23-4); Doc. 28 at 2].[2]  In 2014, he received a written reprimand after engaging in a verbal altercation with a co-worker that involved the exchange of a number of curses.  [Doc. 23 at ¶ 12 (citing Doc. 23-6; Doc. 23-2 at 245:10–19, 246:6-13); Doc. 28 at 2].  Two years later, Plaintiff confronted his supervisor, Terry LoSasso, about two other employees he believed were "switching the blame" for an unrelated event.  [Doc. 23 at ¶ 13 (citing Doc. 23-3 at 3; Doc. 23-2 at 257:12–15); Doc. 28 at 2].  The interaction became loud and Plaintiff informed his supervisor that he "was not going to 'put up with that shit anymore.'"  [Doc. 23 at ¶ 13 (citing Doc. 23-2 at 259:3–8); Doc. 28 at 2].

In a morning meeting in July 2020, Plaintiff became upset with the concrete crew's supervisor, Mr. Koehler, over his transfer back to the sweeping and mowing crew.  [Doc. 23 at ¶ 16 (citing Doc. 23-2 at 24:5–23; Doc. 23-3 at 3; Doc. 25 at 9:00–11:00); Doc. 28 at 2].  Plaintiff demanded that Mr. Koehler speak to him "like a man."  [Doc. 23 at ¶ 16 (citing Doc. 25 at 54–1:45; Doc. 23-2 at 133:7–10); Doc. 28 at 2].  Plaintiff later entered Mr. Koehler's office,

---

[2] While Plaintiff asserts that he only received a write-up for only one outburst, [Doc. 28 at ¶ 10 (citing Doc. 28-1 at ¶ 20)], he does not provide any evidence that the other outbursts did not occur.  [*Id.*].

and the confrontation continued.  [Doc. 23 at ¶ 17 (citing Doc. 23-2 at 140:22–142:8); Doc. 28 at 2].  Plaintiff initially refused to sit down, and he argued about whether Mr. Koehler's dislike for Plaintiff was the cause of his transfer.  [Doc. 23 at ¶ 17 (citing Doc. 23-2 at 144:17–146:24); Doc. 28 at 2].  As Plaintiff was leaving the office, Plaintiff stated "I can't believe a chickenshit outfit like this allows an asshole to be in charge."[3]  [Doc. 23 at ¶ 18 (citing Doc. 23-2 at 150:2–20); Doc. 28 at 2].  Plaintiff left work for the day.  [Doc. 23 at ¶ 19 (citing Doc. 23-2 at 151:211–53:14); Doc. 28 at 2].  Mr. Koehler called Mr. Pumphrey to inform him of his interaction with Plaintiff, and to tell him that "Plaintiff's intimidating attitude, gestures, and behavior and had him concerned that physical violence was within the realm of potential outcomes."  [Doc. 23 at ¶ 19 (internal quotation marks omitted) (citing Doc. 23-7 at 40:5–8); Doc. 28 at 2].

Mr. Pumphrey subsequently contacted the City's human resources department, as well as Director Wick, based on the reporting requirements of the City's Violence-Free Workplace Policy.  [Doc. 23 at ¶ 20 (citing Doc. 23-8 at 44:10–45:20; Doc. 23-9 at 1–2); Doc. 28 at 2].  While Director Wick had only met Plaintiff twice over the last several years of his employment, Mr. Pumphrey did not have the authority to terminate him.  [Doc. 23 at ¶¶ 21–22; (citing Doc. 23-2 at 165:23–167:11; Doc. 23-11); Doc. 28 at 2].  Human resources undertook an investigation.  [Doc. 23 at ¶ 23 (citing Doc. 23-10); Doc. 28 at 2].  On August 3, 2020, the department released a report regarding his interaction with Mr. Koehler.  [Doc. 23 at ¶ 23; Doc. 23-8 at 84–20–24; Doc. 28 at 2].  Plaintiff admittedly does not know what was entailed in the human resources investigation.  [Doc. 23 at ¶ (citing Doc. 23-2 at 165:1–22); Doc. 28 at 2].  That said, Defendants note that two human resources employees—Mr. Monzingo and Scott Jarvis, both over 40 years old—conducted the investigation and interviewed nine witnesses.  [Doc. 23 at

---

[3] Plaintiff notes that he did not believe that Mr. Koehler could hear him, but does not deny that he made such a statement.  [Doc. 28 at ¶ 18].

¶ 24 (citing Doc. 23-10 at 1–21); Doc. 28 at 2]. They independently substantiated the allegations made by Mr. Koehler. [Doc. 23 at ¶ 24 (citing Doc. 23-10 at 17-21); Doc. 28 at 2].

Plaintiff was afforded the opportunity to review the results of the human resources investigation, which consisted of a report. [Doc. 23 at ¶ 26 (citing Doc. 23-10; Doc. 23-15); Doc. 28 at 2]. Mr. Pumphrey recommended to Director Wick that Plaintiff be terminated. [*Id.* at ¶ 25 (citing Doc. 23-8 at 84:13–24); Doc. 28 at ¶ 25]. Director Wick presided over a several hour long pre-disciplinary administrative meeting, at which Plaintiff was present.[4] [Doc. 23 at ¶ 27 (citing Doc. 23-2 at 170:14–172:13, 171:13-16); Doc. 28 at ¶ 27]. Director Wick considered all of the allegations outlined in the human resources report, along with Mr. Pumphrey's recommendation, testimony and behavior from Plaintiff, and testimony from Mr. Koehler and Mr. Pumphrey and concluded that Plaintiff had violated several of the City's ordinances and policies. [Doc. 23 at ¶¶ 28–29 (citing Doc. 23-2; Doc. 23-10; Doc. 23-16 at 34:16–35); Doc. 28 at 2]. Director Wick further found that Plaintiff lacked self-awareness of his issues involving intimidating behavior, insubordination, and angry outbursts. [Doc. 23 at ¶ 29 (citing Doc. 23-4 at 9); Doc. 28 at 2]. By letter dated September 9, 2020, Director Wick terminated Plaintiff, finding specifically

> [u]ltimately, Plaintiff's intimidating behavior toward Mr. Koehler on July 16, 2020, including confronting Mr. Koehler in front of the crew, standing over and yelling at Mr. Koehler in an intimidating fashion, and stating "what kind of chicken shit outfit is this that they let assholes like this be in charge," coupled with Plaintiff's history of similar incidents and lack of self-awareness

---

[4] Defendants contend that "Plaintiff engaged in intimidating behavior toward Mr. Pumphrey and toward Mr. Wick" at the meeting. [Doc. 23 at ¶ 27]. Plaintiff disagrees, arguing that he was in "no position to intimidate anyone during the meeting and felt intimidated himself because they would not make eye contact." [Doc. 28 at ¶ 27].

meant that he had not met the performance expectations of the City.  [Doc. 23 at ¶ 30 (internal quotation marks omitted) (citing Doc. 23-4 at 9–10); Doc. 28 at 2].  He was 56 years old in 2020. [Doc. 23-2 at 8:15–17].

## II.  Procedural History

Plaintiff initiated this action on August 17, 2021.[5]   [Doc. 1].   He raised five claims against the City and Mr. Pumphrey: (1) discrimination on the basis of age in violation of the Age Discrimination in Employment Act '("ADEA") and the Colorado Antidiscrimination Act ("CADA") against the City; (2) discrimination on the basis of a perceived disability in violation of the Americans with Disabilities Act ("ADA") and CADA against the City; (3) age discrimination "plus" in violation of the ADEA against the City; (4) aiding and abetting age discrimination in violation of the ADEA and CADA against Mr. Pumphrey; and (5) intentional interference with contract against Mr. Pumphrey.  *See* [*id.* at ¶¶ 45–61].

On October 15, 2021, Defendants filed a Motion to Dismiss, which the Court granted in part and denied in part on April 13, 2022.  *See* [Doc. 13; Doc. 22].   Specifically, the Court concluded that Plaintiff's age discrimination "plus" claim raised against the City of Arvada warranted dismissal, [*id.* at 41], but denied the Motion with respect to the remainder of Plaintiff's claims, [*id.* at 40].   On May 13, 2022, Defendants filed the instant Motion for Summary Judgment.  [Doc. 23].  With this factual and procedural background in mind, the Court turns to a consideration of the legal standard that will govern the resolution of this Motion.

---

[5] Originally, this Court presided over this matter upon the consent of the Parties, [Doc. 7], in her capacity as a United States Magistrate Judge, *see* [Doc. 11].  On July 29, 2022, the undersigned was appointed as a United States District Judge and continued as the presiding judge.  [Doc. 63].

## LEGAL STANDARD

The Court may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Put differently, the Court's function at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).  Of course, the bar on weighing evidence does not absolve a nonmoving party from the need to offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256.  Such a showing must consist of more than a "scintilla of evidence." *Id.* at 252.  That is, conclusory statements based on speculation, conjecture, or subjective belief are insufficient to survive summary judgment.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Whether a fact is "material" depends on whether it pertains to an element of a claim or a defense; a dispute is "genuine" if the evidence is so contradictory that a reasonable jury could return a verdict for either party.  *See Anderson*, 477 U.S. at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  In reviewing a motion for summary judgment, this Court views all evidence in the light most favorable to the non-moving party.  *See, e.g.*, *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).  That said, the Court is not required to—and will not—make unreasonable

inferences in favor of that party.  *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008).

## ANALYSIS

Defendants seek summary judgment on "all of Plaintiff's remaining claims," [Doc. 23 at 1], i.e., (1) discrimination on the basis of age in violation of the ADEA and CADA against the City ("Claim I"); (2) discrimination on the basis of a perceived disability in violation of the ADA and CADA against the City ("Claim II"); (3) aiding and abetting age discrimination in violation of the ADEA and CADA against Mr. Pumphrey ("Claim IV"); and intentional interference with contract against Mr. Pumphrey ("Claim V").[6]  The Court will address Defendants' arguments with respect to each claim in turn.  As discussed in detail below, the Court concludes that summary judgment is warranted.

## I.  Plaintiff's Remaining Age Discrimination Claims (Claims I and IV)

### A.  Age Discrimination Against the City (Claim I)

#### i.  ADEA and CADA

Plaintiff brings his age discrimination claims against the City under two statutes: the ADEA and CADA.  *Inter alia*, the ADEA prohibits employers from discriminating against any individual over forty "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1); *see also id.* § 631(a) ("The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age.").  CADA prohibits employers from "refus[ing] to hire," "discharg[ing]," "promot[ing] or demot[ing]," or "discriminat[ing] in matters of compensation, terms, conditions, or privileges of

---

[6] The Complaint does not number each claim; the Court does so throughout this Memorandum Opinion and Order, however, so as to provide clarity, consistent with the numbering from its Order granting in part and denying in part the Motion to Dismiss.  [Doc. 22].

employment against any person otherwise qualified because of . . . age[.]" Colo. Rev. Stat. § 24-34-402(1)(a).   CADA parallels federal anti-discrimination statutes, including the ADEA.   As such, courts analyze claims under those two statutes under the same standards.   *See, e.g.*, *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010) ("Colorado and federal law apply the same standards to discrimination claims" (citing *Colo. Civil Rights Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997)); *Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) (analyzing CADA and Title VII claims under the same standard); *Adkins v. United Food & Commercial Workers Int'l Union, Local 7*, 16 F. App'x 855, 859 (10th Cir. 2001) (reasoning that Plaintiff's "claims under the ADEA, Title VII, and [CADA] are analyzed under the same three-part framework established for employment discrimination claims").

### ii.    Application

In considering Defendant's arguments, the Court begins by noting that a plaintiff may prove age discrimination either through direct or circumstantial evidence.  *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).   Under either approach, Plaintiff bears the burden of proving that Defendants intentionally discriminated against him.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 260 (1981). Based on the record before it, Plaintiff has not identified any evidence of direct evidence of age discrimination.[7]  Thus, this Court focuses upon whether there is sufficient circumstantial evidence to create a genuine issue of material fact that precludes summary judgment on Plaintiff's age discrimination claim against the City.

Circumstantial evidence permits the fact finder to draw a reasonable inference from facts indirectly related to discrimination that discrimination, in fact, has occurred.  *Stone*, 210 F.3d at

---

[7] Direct evidence demonstrates on its face that the employment termination was discriminatory. *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990).

1136.  Where a plaintiff relies on circumstantial evidence of discrimination, the Court applies the three-step *McDonnell Douglas* test established by the United States Supreme Court.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See also Garrett*, 305 F.3d at 1216.  The three-step analysis first requires the plaintiff to prove a prima facie case of discrimination.  *Id*.  In cases involving an employee's termination, a prima facie case of age discrimination ordinarily requires the plaintiff to show that he or she was: (1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age.  *Greene v. Safeway Stores, Inc*., 98 F.3d 554, 557–60 (10th Cir. 1996) (collecting cases).  If Plaintiff establishes a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions.  *Garrett*, 305 F.3d at 1216.  "If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext."  *Id*.

***Prima Facie Case.***  Here, the Court assumes without deciding that Plaintiff has produced record evidence of each prong of a prima facie case.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) ("For purposes of our summary judgment review, we assume without deciding that Morgan has demonstrated a genuine issue of fact as to each aspect of the prima facie case described above.").  The Court does so mindful of the fact that "elements of a prima facie case under the *McDonnell Douglas* framework are neither rigid nor mechanistic, [and] their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in [the] plaintiff's favor."  *Adamson v. Multi Cmnty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008).  This principle "is particularly true in an age

discrimination case." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (citing *Stone*, 210 F.3d at 1139 ).

    ***Legitimate Non-Discriminatory Reason.***   The Court therefore proceeds to the second step of the *McDonell Douglas* inquiry, and considers whether Defendants have produced a legitimate, nondiscriminatory reason for his termination.  The Court respectfully concludes that Defendants have done so, and notes that while Plaintiff contests whether these actions were legitimate cause for his termination, he does not contest that they occurred: they point to Plaintiff's confrontation with Mr. Koehler, [Doc. 23 at ¶ 16 (citing (Doc. 23-2 at 24:5–23; Doc. 23-3 at 3; Doc. 25 at 9:00–11:00)], a number of conflicts throughout his employment by the City, [*e.g. id.* at ¶ 12 (citing Doc. 23-6; Doc. 23-2 at 245:10–19, 246:6–13); *id.* at ¶ 13 (citing Doc. 23-6; Doc. 23-2 at 245:10–19, 246:6-13); *id.* (citing Doc. 23-2 at 259:3–8)]; *id.* at ¶ 16 (citing (Doc. 23-2 at 24:5–23; Doc. 23-3 at 3; Doc. 25 at 9:00–11:00)], and his testimony and behavior at the meeting before Director Wick as justification for his termination, [*id.* at ¶¶ 28–29 (citing Doc. 23-2; Doc. 23-10; Doc. 23-16 at 34:16–35)].  Such reasons are legitimate and nondiscriminatory grounds for the termination of Plaintiff's employment.

    ***Pretext****.*   The Court's analysis therefore turns principally on the third step of the *McDonnell Douglas* analysis—that is, whether Plaintiff has adduced sufficient admissible evidence to permit a reasonable juror to conclude that the City's proffered reason for Plaintiff's termination was a mere pretext for age discrimination.  Plaintiff argues that, at bottom, this case turns on the theory that Defendants "wanted to get rid of [P]laintiff because he was missing too much work due to his injuries.  That is, he was old and falling apart."  [Doc. 28 at 9]. Respectfully, Plaintiff has not adduced sufficient evidence to create a genuine issue of material fact to overcome summary judgment.

As an initial matter, Plaintiff *concedes* that Director Wick did not fire him because of his age. [Doc. 23-2 at 273:14–23 (admitting that Director Wick was not "against" Plaintiff because he was over the age of 40, but because he was "doing what his supervisor asked him to do")]. Unlike at the motion to dismiss stage, this Court now looks to the evidentiary record before it, not simply the allegations of the unverified Complaint that are unsupported by the record. *Rohr v. Allstate Fin. Servs.*, 529 F. App'x 936, 940 (10th Cir. 2013) (citations omitted) (declining to rely on plaintiff's factual assertions based solely on his unverified complaint that are not otherwise supported by the record). Plaintiff does not point to any evidence before this Court that Director Wick knew that any of the information before him from the human resources investigation was incorrect. *See generally* [Doc. 28]. Nor does Mr. Williams point to any evidence that Director Wick was aware that Mr. Williams was "missing too much work," due to his age, injuries, or any other reason. [*Id.*]. Instead, the record demonstrates that Director Wick undertook an extensive review of the human resources investigation, during which Mr. Williams was given the opportunity to present information in support of his position. And "[o]ne way an employer can 'break the causal chain' between [a] subordinate's biased behavior and the adverse employment action is for another person or committee higher up in the decision-making process to independently investigate the grounds for dismissal." *Singh v. Cordle*, 936 F.3d 1022, 1038 (10th Cir. 2019). The United States Supreme Court has made clear that "if [an] employer's investigation results in an adverse action for reasons unrelated to [a biased] supervisor's original action, . . . then the employer will not be liable." *Staub v. Proctor Hospital*, 562 U.S. 411, 421 (2011); *see also Simmons v. Sykes Enters., Inc.,* 647 F.3d 943, 949 (10th Cir. 2011) (concluding that "the underlying principles of agency" discussed in *Staub* "apply equally" to claims under the ADEA notwithstanding differences between the ADEA and the Uniformed Services

Employment and Reemployment Rights Act addressed in *Staub*). Here, Plaintiff was afforded an independent human resources investigation, [Doc. 23 at ¶ 24 (citing Doc. 23-10 at 17–21)]; the opportunity to review the report following that investigation, [Doc. 23 at ¶ 26 (citing Doc. 23-10; Doc. 23-15)]; and an hours-long pre-disciplinary meeting in front of Director Wick, [Doc. 23 at ¶ 27 (citing Doc. 23-2 at 170:14–172:13, 171:13-16)]. And indeed, the Tenth Circuit has held that "simply asking an employee for his or her version of events may defeat the inference that an employment decision was discriminatory." *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 516–17 (10th Cir. 2015) (citing *BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484–85 (10th Cir. 2006)). This record precludes a reasonable juror from concluding that age was the but-for cause of his termination by the City through Defendant Wick. *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) (reversing and remanding district court's denial of motion for judgment as a matter of law where Plaintiffs conceded "that they did not believe their managers would intentionally discriminate on the basis of age").

Next, the Court briefly considers Plaintiff's theory that Mr. Williams's incident with Mr. Koehler should have never been elevated to human resources, but that Mr. Pumphrey only did so because he knew that Mr. Wick would take allegations of workplace violence seriously. [Doc. 28 at 13]. Even if this Court were to look to Mr. Pumphrey's actions to find pretext, there is still insufficient evidence to create a genuine issue of material fact. Plaintiff points to six statements by Mr. Pumphrey between February 2019 through May 2020 where Mr. Pumphrey asked Mr. Williams about retiring.[8] [Doc. 28 at ¶ 62 (citing Doc. 28-1 at ¶¶ 23-27 and 29); Doc. 29 at 6

---

[8] To the extent Defendants argue that "[m]ore concerning than the incidents' irrelevance is that many of the facts alleged against the Defendants in the Complaint are false," and that "no reasonable jury could believe his allegations," this Court respectfully declines Defendants' invitation to weigh evidence and/or assess credibility at the motion for summary judgment stage. *See Resol. Tr. Corp. v. Wellington Dev. Grp.,* 761 F. Supp. 731, 734 (D. Colo. 1991) (citation

¶ 62].  But there is insufficient evidence in the record for a factfinder to draw a causal connection between any belief by Mr. Pumphrey that Mr. Williams was too old for the job to Mr. Pumphrey's decision to involve human resources after Mr. Williams's July 2020 incident with Mr. Koehler. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Cypert v. Indep. Sch. Dist. No. I-050 of Osage Cnty.*, 661 F.3d 477, 481 (10th Cir. 2011).  Without any additional facts, this Court concludes that there is not sufficient evidence that Mr. Pumphrey decided to send the July 2020 incident to human resources based on Mr. Williams's age or other protected status.  *Cf.* [28 at 14 (arguing that "this court first needs to decide whether there is sufficient evidence that Mr. Pumphrey decided to send the 'incident' to HR because of Mr. Williams age or on the basis of the perception that Mr. Williams could no longer do his job").[9]

In sum: the "ADEA, like other anti-discrimination statutes, includes a causation requirement."  *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010).  Specifically, it prohibits employers from "discriminat[ing] against any individual with respect to

---

and quotations omitted) ("The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

[9] The Court further notes that Mr. Pumphrey is over 40.  [Doc. 23-2 at 270:2–8].  Thus, Plaintiff's argument that Mr. Pumphrey's statements reflect pretext for age discrimination or that Mr. Pumphrey referred the July 2020 incident to human resources—without more— is further undermined by the fact that he is in the same protected class as Plaintiff.  *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006); *Gilkey v. Siemens Energy & Automation, Inc.*, 125 F. App'x 908, 911 (10th Cir. 2005).

Finally, this Court observes that it is undisputed that Plaintiff was employed by the City for over 30 years.  [Doc. 23 at ¶ 1].  Four of the five individuals holding supervisory positions in Plaintiff's division at the time of his termination were over the age of 40.  [Doc. 23-2 at 270:2–8].  In fact, 70% of employees in the City's Public Work System are over 40.  [*Id*. at 270:20–25].  The Court finds instructive the ample law noting that the relative age of retained employees may undermine claims of age discrimination.  *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1201 n.11 (10th Cir. 2008).

his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The United States Supreme Court has been clear that the ADEA requires but-for causation.  *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175 (2009) ("Our inquiry therefore must focus on the text of the ADEA to decide whether it authorizes a mixed-motives age discrimination claim. It does not.").  And here, the Court's review of the record shows insufficient evidence that would permit a reasonable juror to conclude that Plaintiff's age was the *but-for* cause of his termination, or that the City's proffered reason for terminating his employment was pretextual.

Indeed, Plaintiff appears to recognize that conclusion and instead argues that *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), should alter this analysis and permit the Court to employ a mixed-motive analysis to his claims.  He argues that, if he shows "that age *played at least a part* in why he was terminated," summary judgment is inappropriate.  [Doc. 28 at 12]. But *Bostock* is inapposite to this case inasmuch as it addressed Title VII of the Civil Rights Act of 1964, not the ADEA, and clarified that "[a]n employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex."  140 S. Ct. at 1737.  Title VII and the ADEA do not employ the same causation standards.  *Simmons*, 647 F.3d at 949 ("Unlike Title VII . . . 'the ADEA's text does not provide that plaintiff may establish discrimination by showing that age was simply a motivating factor.'").  Moreover, Plaintiff has failed to adduce sufficient evidence to allow a factfinder to conclude that his age was even a *factor* in, let alone a *but-for cause* of, his termination.  To the contrary, his testimony suggests that the City was unaware of his age.  [Doc. 23 at 9 ("I have no evidence whatsoever of what he did, what his actions were. All I can go by is my personal feelings.")].  To make out a circumstantial case for age discrimination under ADEA

or CADA, more is required.  As such, the Court respectfully **GRANTS** Defendants' Motion with respect to Claim I.

### B.    Aiding and Abetting Age Discrimination (Claim IV)

Plaintiff also alleges that "Defendant Pumphrey aided and abetted the City in forcing Mr. Williams to resign" in violation of CADA.  *See* [Doc. 1 at ¶ 56]; Colo. Rev. Stat § 24-34-201(1)(e)(I).  That provision of CADA provides that "[i]t is a discriminatory or unfair employment practice . . . [f]or any person, whether or not an employer, an employment agency, a labor organization, or the employees or members thereof: (I) [t]o aid, abet, incite, compel, or coerce the doing of any act defined in this section to be a discriminatory or unfair employment practice . . ."  Colo. Rev. Stat § 24-34-201(1)(e)(I).  As discussed, CADA protects employees from discrimination on the basis of their age.  Colo. Rev. Stat. § 24-34-402(1)(a).

Defendants argue that summary judgment is warranted with respect to Claim IV on two principal grounds: first, that an aiding-and-abetting finding requires the existence of underlying age discrimination and, second, that Plaintiff has not demonstrated that Mr. Pumphrey assisted any others "in their performance of prohibited acts."  [Doc. 23 at 17].  Plaintiff argues that there is "no principled distinction" between certain federal cases analyzing subordinate liability, [Doc. 28 at 16], and that "if Mr. Williams was terminated because Mr. Pumphrey instigated charges against him and recommended that he be discharged, because of his age or perceived disability, there is subordinate liability even if the employer may avoid liability due to clean hands."

As discussed in detail above, Plaintiff has not adduced evidence that he was discriminated against on the basis of his age.  *See supra* § I.A.  Neither Plaintiff nor the Court has located any case in which an allegation of aiding and abetting age discrimination has survived summary judgment, outside a finding that underlying age discrimination may have

16

occurred.  *See Heguy v. Unleaded Software, Inc.,* No. 17-CV-02399-STV, 2019 WL 2151305, at

*12 (D. Colo. May 17, 2019) (dismissing a CADA aiding and abetting claim where there was no

finding of underlying discrimination).  *Cf. Harris v. Falcon Sch. Dist. 49*, No. 18-cv-02310-RBJ,

2020 WL 4193509, at *12 (D. Colo. July 21, 2020) ("Because I found that Mr. Harris stated a §

1981 claim sufficient to survive summary judgment, he has shown sufficient underlying

discrimination to support an aiding and abetting claim under CADA.").[10]  Nor can this Court

find a logical basis to do so.  As such, the Motion is **GRANTED** with respect to Plaintiff's

aiding-and-abetting claim.

## II.  ADA Claim for Perceived Disability Against the City (Claim II)

Plaintiff also alleges that his termination was the result of a perceived disability, in

violation of the ADA and CADA.[11]  Defendants argue that his claim is subject to summary

---

[10] It is also unclear whether Mr. Pumphrey can be held individually liable for aiding and abetting a CADA violation, based on conduct taken within the scope of his employment, as a matter of law.  In *Judson v. Walgreens Co.*, No. 20-cv-00159-CMA-STV, 2021 WL 1207445, at 4–5 (D. Colo. Mar. 31, 2021), the court noted the lack of explicit guidance from Colorado courts "considering whether a plaintiff may bring a CADA aiding and abetting claim against a supervisor for conduct within the scope of the supervisor's employment for a corporate employer."  But, as Judge Arguello reasoned, a supervisor is not a "distinct legal actor[ ] capable of aiding and abetting" his or her employer in discriminatory acts when acting within the scope of his or her employment.  *Id.*  That conclusion rested upon "well-established principles of agency law, as well as Colorado case law that has found CADA liability where a *separate* legal entity aided and abetted the employer's discriminatory practice."  *Id.* at *5 (emphasis added).  *Mondragon v. Adams Cnty. Sch. Dist. No. 14,* No. 116CV01745LTBKMT, 2017 WL 733317, at *13 (D. Colo. Feb. 24, 2017) (declining to dismiss a claim for aiding and abetting a CADA violation based on the defendant's initiation of a surreptitious investigation against her and false allegations of an affair or other promiscuousness aided and abetted in her discriminatory and retaliatory termination by the District without discussion of whether the defendant's conduct fell within the scope of employment).  Because there is no viable age discrimination claim, this Court need not resolve this second issue.

[11] Plaintiff references "§ 24-34-402(1)(a)" in his Complaint, which the Court construes as a claim raised under CADA.  That statute prohibits discrimination in employment "because of disability."  Colo. Rev. Stat. § 24-34-402(1)(a).  The Court notes, however, that the claim itself is for an "*ADA* Violation for Perceived Disability," [Doc. 1 at 11 (emphasis added)], and CADA is not mentioned by name in Claim II.  For the avoidance of doubt, the Court clarifies that it has

judgment, as (1) plaintiff has failed to adduce evidence that the City regarded him as disabled, (2) a lateral transfer is not an adverse employment action, (3) Plaintiff has not shown circumstances that would give rise to an inference of unlawful discrimination, and (4) Defendants maintained a legitimate, nondiscriminatory reason for terminating his employment. [Doc. 23 at 14–17].

The Court begins by noting that Plaintiff has conceded that he is not disabled. *See* [Doc. 1 at ¶ 51; [Doc. 23 at ¶ 5 (citing Doc. 23-2 at 16:15–17, 23:21–24:16 ("I had no disability.")]. But, under the ADA, a person is disabled if he (1) has a physical or mental impairment that substantially limits one or more of his major life activities, (2) has a record of such an impairment, or (3) *is regarded by his employer as having such an impairment*. 42 U.S.C. § 12102(1) (emphasis added). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Though the existence of a perceived disability may give rise to a claim under the ADA, Plaintiff admits that he does not know what perceived disability that the City believed was at issue. [Doc. 23-2 at 23:21–24]. To the extent he argues that his perceived disability was the result of his injuries in 2016 and 2019, the Court notes that impairments that are "transitory and

---

analyzed Plaintiff's claims under both federal and state law. But, pursuant to Colorado law, purported violations of CADA are to be considered under the same framework and authority as claims alleged under the ADA. *See* Colo. Rev. Stat. § 24-34-405(6) ("Except when federal law is silent on the issue, this section shall be construed, interpreted, and applied in a manner that is consistent with standards established through judicial interpretation of . . . the federal 'Americans with Disabilities Act of 1990', as amended[.]"). As such, the inclusion of a claim raised under CADA does not substantively alter this Court's analysis of Plaintiff's perceived disability claim given the ample federal law addressing the questions before the Court.

minor" may not be used to support a "regarded as" claim of disability discrimination under the ADA, and that an impairment is transitory if it has an actual or expected duration of six months or less. 42 U.S.C. § 12102(3)(B). And as Plaintiff alleges that he does not have any actual impairments, to survive summary judgment he must establish that a genuine factual issue exists regarding whether the County (1) mistakenly perceived him as being impaired, and (2) mistakenly believed the perceived impairment substantially limited at least one major life activity. *See MacDonald v. Delta Air Lines, Inc*., 94 F.3d 1437, 1443 (10th Cir. 1996).

It is Plaintiff's burden to establish that he has an actual or perceived disability. *Steele v. Thiokol Corp*., 241 F.3d 1248, 1253 (10th Cir. 2001). Respectfully, the Court finds that Plaintiff has not adduced evidence that Defendants believed he was disabled; indeed, his own testimony demonstrates that he is not, and that he is not sure what disability Defendants would have attributed to him. [Doc. 23-2 at 23:21–24]. While Plaintiff speculates that his employer discriminated against him for not doing his "job like [he] used to do it," and that he was "falling apart," [Doc. 23-2 at 24:13–15], "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings," *Bones*, 366 F.3d at 875. Consistent with the reasoning of other courts that have confronted similar questions, that concession—together with the lack of record evidence that the City or Mr. Pumphrey believed he was disabled—is fatal to Plaintiff's ADA claim. *See, e.g.*, *Jones v. Mineta*, No. 02–2392–JWL, 2004 WL 1534177, at *6 (D. Kan. July 8, 2004) ("Of course, a plaintiff's disability cannot have been a determining factor in the employer's decision if the employer did not know about the plaintiff's disability.") (citing *Whitney v. Bd. of Educ. of Grand Cnty.*, 292 F.3d 1280, 1285 (10th Cir. 2002); *Wilkinson v. Village of Ruidoso*, No. CIV 03-0919 JB/LCS, 2004 WL 7337819, at *5 (D.N.M. Aug. 23, 2004) ("A plaintiff cannot establish a prima facie case of disability discrimination under the ADA when

the employer does not know that the employee is disabled.") (citing *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995).

Summary judgment is therefore **GRANTED** with respect to Claim II of the Complaint.

### III.   Intentional Interference with Contract (Claim V)

Plaintiff's final claim is a state-law claim against Mr. Pumphrey for the intentional interference with contract.  He alleges that he "had an employment contract with the City," and that "Mr. Pumphrey knew of this employment contract" and "intentionally caused the City to terminate this employment contract."  [Doc. 1 at ¶ 58].

Intentional interference with contract claims are raised under Colorado state law.  *See Mueller v. Swift*, No. 15-cv-1974-WJM-KLM, 2017 WL 2362137, at *12 (D. Colo. May 31, 2017) (reasoning that intentional interference with contract claims are raised under Colorado law) (citing *Carman v. Heber*, 601 P.2d 646, 648 (Colo. App. 1979)).  28 U.S.C. § 1367(c)(3) provides that a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction."  *See also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." (emphasis added)).  The Tenth Circuit has recognized that there are compelling reasons "for a district court's deferral to a state court rather than retaining and disposing of state law claims itself[,]" including factors such as "economy, fairness, convenience and comity."  *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995).  Other courts in this District have noted the "strong preference" for trial courts to decline the exercise of supplemental jurisdiction when federal claims have been dismissed.  *Denver*

*Homeless Out Loud v. City and Cnty. of Denver*, No. 20-cv-2985-WJM-SKC, 2022 WL 17688599, at *15 (D. Colo. Dec. 15, 2022).

Here, there are no remaining questions related to federal law; this Court has awarded summary judgment on Plaintiff's ADA and ADEA claims, and its jurisdiction is premised solely on the existence of a federal question. *See* [Doc. 1 at ¶ 2 ("This court has federal subject matter jurisdiction.")].[12]   Federal courts "possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).   This Court respectfully declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim, without substantively passing on its merits. *Ball*, 54 F.3d at 669.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     Defendants' Motion for Summary Judgment, [Doc. 23], is **GRANTED** in favor of Defendants the City of Arvada and Daniel Pumphrey and against Plaintiff Brian Williams;

(2)     Defendants are entitled to their costs pursuant to Federal Rule of Civil Procedure 54(d) and D.C.COLO.LCivR 54.1;

(3)     Defendants' Motion in Limine, [Doc. 37], is **DENIED AS MOOT**;

(4)     The Trial Preparation Conference set for February 17, 2023 at 10:00 a.m., as well as all other upcoming dates and deadlines in this case, are **VACATED**; and

(5)     The Clerk of Court is **DIRECTED** to terminate this action accordingly.

---

[12] The Court notes that the Parties did not address the topic of supplemental jurisdiction over Plaintiff's fifth claim for relief in their briefing.   Nevertheless, this Court has an independent obligation to ensure that subject matter jurisdiction is present and may raise the issue *sua sponte*. *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017).

DATED:  February 16, 2023              BY THE COURT:

Nina Y. Wang
United States District Judge